**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**SHEILA L. MATHENY**                                                                                      **PLAINTIFF**

**V.                                CASE NO.: 1:10CV00086 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sheila L. Matheny appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background:**

On April 16, 2008, Ms. Matheny protectively filed for DIB alleging disability beginning on the same date due to congestive heart failure, asthmatic bronchitis, hypertension, and back problems. (Tr. 4, 61, 101-103) She had acquired sufficient quarters of coverage to remain insured through September 30, 2010. (Tr. 8)

Ms. Matheny's claims were denied initially and upon reconsideration. (Tr. 55-58) At her request, an Administrative Law Judge ("ALJ")[1] held a hearing on February 2,

---

[1]The Honorable Harold D. Davis.

2010, at which she appeared with her counsel and testified. (Tr. 27-50) At the hearing, the ALJ also heard testimony from a vocational expert ("VE"). (Tr. 51-53)

The ALJ issued a decision on June 21, 2010, finding that Ms. Matheny was not disabled for purposes of the Act. (Tr. 8-20) On September 14, 2010, the Appeals Council denied her request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Matheny was forty-seven at the time of her hearing. (Tr. 33) She had a high school education and had worked as a dog groomer and a care-giver/companion. (Tr. 33, 35, 51) At the time of the hearing, she lived with her brother and was working part-time as a care-giver/companion for an elderly man. (Tr. 33-34)

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g).

The ALJ found that Ms. Matheny had not engaged in substantial gainful activity since her alleged onset date. (Tr. 10)  He noted, however, that Ms. Matheny testified at the hearing that she continued to work sixteen hours per week as a care-giver for an elderly man. (Tr. 10)  While this job was classified as light work by the vocational expert, it did not generate enough earnings to be considered substantial gainful activity. (Tr. 10)

The ALJ found that Ms. Matheny had the following severe impairments: "hypertension, congestive heart failure (moderate), and asthmatic bronchitis." (Tr. 11)  He found that Ms. Matheny did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 15)

The ALJ determined Ms. Matheny had the residual functional capacity to perform light work except that she had to have "a sit/stand option and work in an environmentally controlled area." (Tr. 16)  He found that Ms. Matheny could not perform her past relevant work. (Tr. 19)  Relying on the testimony of the VE, he found that Ms. Matheny had the residual functional capacity to perform the jobs of cashier and hand packer, which existed in significant numbers in the national economy. (Tr. 19-20)

**III.**   <u>Analysis</u>:

    A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision. But the decision cannot be reversed simply because there is some evidence to support a different outcome. *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.   *Listed Impairment*

In her brief, Ms. Matheny argues that the ALJ erred at step three of the sequential evaluation process by finding she did not have an impairment (or combination of impairments) that met or equaled a listed impairment. (#10 at p.6) Ms. Matheny did not specify, however, which listed impairment she met. Nor did she point to any evidence in the record that would support her assertion that she meets a listed impairment.

On October 19, 2011, the Court ordered Ms. Matheny to provide a supplemental brief identifying the specific listing she claims to meet and citations to the evidence in the

record supporting her claim.  (#13)  The Court notified her that if she failed to submit a supplemental brief within fourteen days, it would assume she had withdrawn this argument.  The time for filing a supplemental brief has passed, and Ms. Matheny has not supplemented her brief.  Accordingly, the Court assumes she has withdrawn her argument that the ALJ erred at step three by finding she did not meet a listed impairment.

  C.  *Residual Functional Capacity*

Ms. Matheny claims the ALJ's residual functional capacity finding is not supported by substantial evidence.  (#10 at p. 6)  To be entitled to disability insurance benefits, Ms. Matheny must prove she was disabled before her insurance expired on September 30, 2010.  *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted).  A claimant's residual functional capacity is a medical question, and at least some medical evidence must support this finding.  *Id*.

The ALJ may reject the opinion of any medical expert that is inconsistent with the medical record as a whole.  *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) (citing *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008)).  And in fact, it is the ALJ's job to resolve conflicts among the various treating and examining physicians.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)(quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).  Also, a treating physician's opinion that a claimant is disabled or cannot

be gainfully employed gets no deference, because it invades the province of the Commissioner, whose job it is to make the ultimate disability determination. *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011)(citing *House v. Astrue,* 500 F.3d 741, 745 (8th Cir. 2007)).

Specifically, Ms. Matheny claims, "[t]he ALJ's decision made a vague reference to Plaintiff's medical records, without indicating which portion of the medical evidence he relied upon in determining Plaintiff's residual functional capacity." This is not the case.

In his opinion, the ALJ reviewed all of Ms. Matheny's medical evidence in considerable detail, beginning with evidence from before the onset date. The ALJ noted that on March 1, 2007, Ms. Matheny had "normal" results from a stress echocardiogram. The test did not uncover any evidence of ischemia. (Tr. 11, 202)

The ALJ also noted that in March, 2008, Ms. Matheny complained of back pain. (Tr. 11, 232)  A straight leg test was negative, however, and there was no lower spine process or sciatic tenderness. (Tr. 11-12, 233)  On April 16, 2008, Ms. Matheny again complained of back pain. (Tr. 240)  An MRI of her lumbar spine revealed a "mild disk bulge" at the lower three lumbar disk levels, no disk herniation, and no spinal stenosis or foraminal narrowing. (Tr. 282)  After examining Ms. Matheny on April 30, 2008, Terry Burns, M.D., noted that her lumbar was "diffusely tender" and prescribed hydrocodone. (Tr. 242)

On June 5, 2008, Dr, Burns noted that Ms. Matheny reported that she had not seen much improvement with chiropractic care and her prescriptions.  (Tr. 343)  Dr. Burns diagnosed her with chronic back pain and ordered a refill of her hydrocodone prescription.  (Tr. 344)

The ALJ noted that, during a visit to Dr. Burns on July 24, 2008, Ms. Matheny reported continuing mild-to-moderate back pain.  (Tr. 12)  She denied psychiatric problems.  (Tr. 12, 411)  He diagnosed her with degenerative lumbar disease and ordered refills for her hydrocodone and soma prescriptions.  (Tr. 12, 411)

On September 16, 2008, Dr. Burns saw Ms. Matheny for her monthly prescription refills and noted that he wondered whether Ms. Matheny might have fibromyalgia.  (Tr. 426)  He prescribed samples of Lyrica.  (Tr. 426) On December 9, 2008, Ms. Matheny reported to Dr. Burns that the Lyrica was helping her muscle pain.   (Tr. 450)

The ALJ reviewed Ms. Matheny's treatment records from Ash Flat Behavioral Health (Tr. 12-13) and noted that on September, 2008, Ms. Matheny was diagnosed with "major depressive disorder" and was assigned a  Global Assessment of Functioning ("GAF")[3] score of 40 by Bonnie Selby, a Licensed Clinical Social Worker.  (Tr. 430)  She noted, however, that this level of impairment was not supported by the treatment records from Ms. Matheny's primary care physician.

---

[3] A Global Assessment of Functioning score is a 100-point scale used by mental health providers to gauge a patient's overall functioning level.

On November 17, 2008, Ms. Matheny reported to Sherry Armstrong, APN, that her mood was "better" and that "mentally she feels better." In spite of Ms. Matheny's reports that she felt better, Ms. Armstrong recorded a GAF score of 40. (Tr. 445) In December, 2008, and January, 2009, Ms. Matheny again reported that she was feeling better, yet Ms. Armstrong assigned GAF scores of 45. (Tr. 483-486) The ALJ noted that in February, 2009, Ms. Matheny denied any psychiatric problems to Dr. Burns. (Tr. 456) In July, 2009, Ms. Matheny reported that her medications were working well. (Tr. 503) The ALJ also noted that in an October, 2009 progress note, Ms. Armstrong wrote that Ms. Matheny reported having "no pain" and no medication side effects. (Tr. 561)

The ALJ also discussed the August 4, 2008, consulting mental diagnostic evaluation of Ms. Matheny by Robert L. Hudson, Ph.D. (Tr. 374-376) He diagnosed Ms. Matheny with dysthymic disorder and assigned a GAF score of 55-65. (Tr. 376) He noted that Ms. Matheny had no significant limitations in adaptive ability; in her ability to interact socially; in her ability to communicate; in mental/cognitive basic work-like tasks; in her ability to attend and sustain concentration; in persistence in completing tasks; or in completion of tasks in a timely fashion. (Tr. 376) He added, however, "it is not implied she could manage this in a fully competitive work situation 40 hours a week." (Tr. 376)

In May, 2009, Caleb Gaston, M.D., noted that Ms. Matheny's home blood pressure readings were "fantastic," and she denied any side effects from her blood pressure medication. (Tr. 13, 489)

Finally, the ALJ considered the reports of the state agency physicians. (Tr. 13) State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. 20 C.F.R. § 416.927(f); SSR 96-6p. Here, on June 24, 2008, Dr. David L. Hicks reviewed Ms. Matheny's medical records and assessed her with the physical residual functional capacity ("RFC") for light work. (Tr. 366) Dr. Ronald Crow reviewed Ms. Matheny's records on reconsideration and affirmed the June, 2008, evaluation of Dr. Hicks. (Tr. 378)

On August 6, 2008, Dr. Paula Lynch completed a Psychiatric Review Technique form on Ms. Matheny. She found that Ms. Matheny had moderate limitation in activities of daily living, and maintaining concentration, persistence and pace, but only mild difficulties in maintaining social functioning and no episodes of decompensation. (Tr. 395) She assessed Ms. Matheny's mental RFC as, "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (Unskilled)." (Tr. 383)

Here, even though the ALJ did not limit Ms. Matheny to unskilled work, the VE testified that the jobs he found Ms. Matheny could do with her residual functional capacity were available in the local and national economy at both the semi-skilled and unskilled levels. (Tr. 52)

The ALJ properly considered all of the medical evidence including the opinions of Ms. Matheny's state agency, consulting, and treating medical sources when determining she had the residual functional capacity for a limited range of light work. The VE testified that both of the jobs he identified that someone with Ms. Matheny's residual functional capacity would do, hand packer and cashier, were available at both the semi-skilled and unskilled levels. The ALJ's residual functional capacity determination is supported by substantial evidence.

## IV. Conclusion:

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Sheila Matheny was not disabled within the meaning of the Act. Accordingly, her appeal is DENIED, and the Clerk is directed to close the case, this 8th day of November, 2011.

_____
UNITED STATES MAGISTRATE JUDGE